**AFFIDAVIT IN SUPPORT OF A SEARCH WARRANT FOR:**

**WASHINGTON D.C.**

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA**

AFFIDAVIT IN SUPPORT OF A SEARCH WARRANT FOR
**WASHINGTON, D.C.** The premise,
, is described as a red brick row house with white trim and grey colored steps leading up to the front door. It is located on the south side of
and west of Washington, D.C. The front door is brown in color and the residence is numbered ' in white above the front door.

1. Your affiant in this matter is Special Agent Joshua C. Green of the Bureau of Alcohol, Tobacco, Firearms & Explosives (ATF). I am currently assigned to the Washington Area High Intensity Drug Trafficking Area (HIDTA) Task Force. I have been a Special Agent with ATF for over five years. Prior to becoming an ATF Special Agent, I was a Special Agent with the former Immigration and Naturalization Service (INS) for over five years, the last three of which were in the Washington, D.C. area. Since becoming a Special Agent with the ATF, I have taken part in numerous firearms related investigations involving armed gangs, armed drug traffickers, felons and illegal aliens in possession of firearms and ammunition, firearms trafficking, and the use of firearms in furtherance of illegal drug trafficking. In addition, I have attended training related to firearms and firearms investigations at the Federal Law Enforcement Training Center in Glynco, Georgia, as well as additional training sponsored by HIDTA involving narcotics investigations.

2. As a result of these firearm and drug related investigations, your affiant has participated in the preparation, presentation and/or execution of over one hundred and twenty search warrants in the Washington, D.C. area which have resulted in the recovery of firearms and firearm boxes, ammunition and boxes of ammunition, shell casings, magazines, holsters, pouches for ammunition, gun cases, gun safes, photographs of individuals with firearms, and documentary evidence indicative of firearms possession and violations. Many of these search warrants were obtained as a direct result of information and evidence of illegal firearm possession within residences within the District of Columbia. Further, many of these search warrants were obtained and executed based on information

provided by Confidential Informants (CIs) or after the arrest of individuals in possession of firearms within the District of Columbia.

3.   During the course of your affiant's professional experience and participation in the investigation of firearms offenses, I have had the opportunity to interview numerous defendants, witnesses, victims, CIs and police officers regarding firearm related crime specifically within the District of Columbia. Through these interviews and experience in investigating firearm related crime, I have learned that suspects who obtain firearms and ammunition illegally in Washington, DC, keep these items in order to commit further crimes, which include robbery, carjacking, and assault, as well as other crimes against people and property. I have learned that these suspects keep firearms and ammunition in order to protect the profits of their criminal activity, to include money derived from drug dealing, robbery or burglary, actual drugs (of any amount), jewelry, credit cards and other fraudulently obtained items. Further, I have learned that suspects who commit crime with firearms keep firearms and ammunition to protect themselves from law enforcement, rival gang members and other individuals who may pose a threat to the safety of these suspects. I have learned that suspects who obtain firearms and ammunition in Washington, DC, keep these items within their residences and/or vehicles, or within the residences of others, in order to protect them from theft and to protect their illegal criminal profits which are stored within these residences and/or vehicles. I have also learned that suspects who own or possess firearms and ammunition in Washington, DC, also keep other firearm related equipment, to include ammunition magazines, holsters, bullet proof vests, pistol grips, boxes, cleaning kits and paperwork relating to the acquisition and disposition of firearms. I have learned that suspects keep firearms, ammunition and their accessories secreted within their residences and/or vehicles for extended periods of time due to the fact that it is illegal, as well as difficult, to obtain firearms and firearms related accessories, such as ammunition, within the District of Columbia.

4.   From my experience as an ATF agent, I have learned that firearms and ammunition are not manufactured within the District of Columbia and therefore must cross state lines and travel in interstate or foreign commerce prior to entering the District of Columbia. Through my experience I have learned that many of the firearms recovered in Washington, DC, were purchased in Virginia or Maryland, or other "source" states such as Florida, North Carolina, and Georgia. I have further experienced that numerous firearms and amounts of ammunition recovered in Washington, DC, were purchased in other States. A large number of firearms recovered in Washington, DC, have been "straw purchased", which is defined as the acquisition of a firearm from a federally licensed dealer by an individual (the "straw purchaser"), done for the purpose of concealing the identity of the true intended receiver of the firearm. The purchased firearms are then transported over state lines into the District of Columbia by the D.C. resident, the "straw purchaser", or another recruited person. The firearms are then carried and

transported on their person and/or in their vehicle and used in the commission of crimes, then subsequently stored in the firearm possessor's residence and/or vehicles for extended periods of time. Oftentimes the "straw purchaser" will also purchase boxes of ammunition for the receiver of the firearm as well. In turn, the suspect will keep firearm boxes, ammunition boxes and paperwork relating to the acquisition of the firearm and/or ammunition in their residence and/or vehicles along with the firearm. Occasionally, the "straw purchaser" reports the purchased firearm stolen, thus distancing him or herself from criminal activity the true firearm possessor may engage in.

5. Your affiant has also learned that many firearms entering Washington, D.C. have been stolen from gun stores or residences in other states during the commission of robberies or burglaries. I have learned that suspects who acquire stolen firearms and ammunition from other states are prone to sell and/or trade them in Washington, D.C. due to the high demand for these items by the criminal element. Suspects who obtain stolen firearms and/or ammunition, should they not sell and/or trade them soon after their receipt, may store these items in their residences and/or vehicles for extended periods of time for the same reasons noted in the previous paragraphs. In addition, these suspects may attempt to remove or obliterate any identifying markings (such as serial number, make and model) of a firearm in order to limit the ability of law enforcement to determine the original or any subsequent purchaser or possessor of the firearm. As such, suspects may be more likely to hold onto such firearms and store them in their residences and/or vehicles, for such firearms are more valuable to the criminal element if law enforcement cannot trace or track the firearm's history and/or movement.

6. Since this affidavit is being submitted for the limited purpose of obtaining a search warrant for the target premises, it is not intended to include each and every fact observed by your affiant, your affiant's fellow ATF agents, or known to the government. Your affiant has set forth only those facts necessary to support probable cause for this application.

7. Within the past 72 hours, a reliable Confidential Informant (CI) reported to your affiant that concealed within
   **WASHINGTON, D.C** is a firearm, described as a silver in color handgun. More specifically, the CI stated that the CI had seen the possessor, known as "S", in possession of this firearm inside
   **WASHINGTON, D.C.** The CI knows "S" to have had access to this residence over a period of time of at least several months. The reliability of the CI is that this CI has participated in a number of controlled narcotics and/or firearm purchases and has provided reliable information regarding firearms, narcotics trafficking and other violent criminal activity to ATF and MPD. This information has led to the execution of over a dozen search warrants and the recovery of

narcotics, firearms, ammunition and money. Further, the information that the CI has provided has been verified accurate by your affiant and other members of the ATF/HIDTA Task Force. No information provided by this source has ever been proven incorrect or misleading.

8. A check made using Faces of the Nation, a computer database consisting of credit header information, revealed that a Sheldon DOUGLAS (Date of Birth: 1979; Social Security Number                    is associated with
   ¯, **WASHINGTON, D.C.**

9. A check of the records compiled by the National Crime Information Center (NCIC) was conducted on Sheldon DOUGLAS (Date of Birth:           1979; Social Security Number              ). These records indicate that DOUGLAS (also known as Sheldon THOMAS) has prior drug related arrests in Washington, D.C., including an arrest by the ATF on October 19, 2000, and his subsequent conviction for Conspiracy to Distribute and Possession With Intent to Distribute 50 Grams or More of Cocaine Base. NCIC indicates that DOUGLAS (aka: THOMAS) was sentenced to time served on December 19, 2003, and given sixty months supervised release.

10. A review of the ATF case regarding DOUGLAS (aka: THOMAS) indicates that he was known to at least one ATF CI as "S" and used
    ¯¯¯             ¯¯¯, **WASHINGTON, D.C.** while engaged in illegal drug and firearm sales. More specifically, during ATF operations involving controlled purchases of illegal drugs and a firearm, DOUGLAS (aka: THOMAS) would go into the residence before and/or after illegal drug transactions and, on at least one occasion, stored a firearm and illegal drugs under the porch of the residence. When he was arrested on October 19, 2003, he was found within
    ◡                              **WASHINGTON, D.C.**

11. Based upon the aforementioned information and your affiant's training and experience in firearms related investigations, your affiant believes that probable cause exists that within
    **WASHINGTON, D.C.,** there is presently concealed a firearm and/or ammunition, paperwork and documentation related to the possession, acquisition, disposition, and maintenance of firearms, as well as ammunition magazines, ammunition boxes, holsters, ammunition pouches, firearm boxes, cleaning kits, bullet proof vests, firearms parts, photographs of firearms, and accessories for firearms such as grips, scopes, and slings. In addition, I believe that there is concealed paperwork and documentation related to the identity of the possessors of such items and/or occupancy of the premises and I therefore respectfully request a search warrant be issued for the premises, curtilage, and locked boxes within the premises and

curtilage, of                                              , **WASHINGTON, D.C.,** authorizing the seizure of the aforementioned items and any additional contraband discovered within.

_____
Joshua C. Green
Special Agent
Bureau of Alcohol, Tobacco, Firearms & Explosives

Sworn to and subscribed before me this _____ day of August, 2005.

_____
United States Magistrate Judge.